252 A.2d 335.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND, *Executor u/w of Hezekiah C. Wardwell vs.* THE ALEXANDER VON HUMBOLDT STIFTUNG *et al.*

APRIL 15, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.   This civil action for construction of a will and instructions pertaining thereto was brought by the plaintiff bank in its capacity as executor of the estate of Hezekiah C. Wardwell, late of Bristol, Rhode Island, who died January 8, 1964.   All persons and organizations hav-

ing an interest therein were made parties defendant. Testimony was taken in the superior court and when the case was ready for final judgment, it was certified to us for our determination pursuant to G. L. 1956, §9-24-28, as amended.

Hezekiah C. Wardwell executed his will on April 18, 1952. This litigation arises out of the language found in the following portion of paragraph Tenth of that instrument:

"Tenth: All the rest, residue and remainder of my estate, real and personal, of which I shall be seized and possessed or to which I may be in any way entitled at my decease, including all estate, real and personal, over which I may then have power of appointment, I give, devise and bequeath as follows:

"(a) A one-half (½) part thereof to the Alexander von Humboldt Stiftung of Berlin, Germany, the income thereof to be used to assist worthy Spanish students to obtain a musical education. It is my desire that preference be given to students from the Provinces of Aragon and Navarra in Spain."

The remainder of the residuary clause is divided equally between three other legatees.

The complaint states that plaintiff is uncertain as to the meaning and effect of the testator's language as it pertains to the Alexander von Humboldt Stiftung of Berlin, Germany. The defendant making claim to the questioned portion of the Wardwell will is the Alexander von Humboldt Stiftung of Bad Godesberg, West Germany. The English equivalent of the word "Stiftung" is "foundation" meaning an organization formed for charitable, educational or like purpose. Hereafter, we shall refer to defendant claimant as the "Humboldt Foundation" or "the foundation."

The plaintiff's complaint contains six questions. The first of these, the answer to which is dispositive of all issues in the case, reads as follows:

"1. Under the provisions of said Will, may Plaintiff distribute a one-half (½) part of the residue to the

> Alexander von Humboldt Stiftung of Berlin, Germany, it being entitled to take such distribution outright, free of any trust restrictions?"[1]

The first witness in superior court was Dr. Heinrich Pfeiffer, the chief executive officer of defendant foundation. He outlined the history of his organization which may be summarized as follows: The Alexander von Humboldt Stiftung of Berlin, Germany was established by the Weimar Republic in 1925. It has existed as a legal entity since that time. Its purpose, as set forth in its charter, was to grant research scholarships to highly qualified "students and re-searchers" of foreign nationality enabling them to carry out a program of study within the Federal Republic of Germany. During World War II, when the Third Reich governed Germany, the foundation operated on a small scale, using mostly private funds. The Humboldt Founda-tion retained its legal identity throughout the years of Allied occupation and its charter remained in effect after the Federal Republic of Germany was reestablished in 1949. In 1953, the foundation submitted a proposed new charter to both federal and state governments. It was approved by Chancellor Adenauer and thereafter by the state of North Rheine—Westphalia. The 1925 charter was changed in two ways. First, it transferred the domicile of the foundation from Berlin to Bad Godesberg, a sister city to Bonn, the new seat of West German government. In addi-tion, the purpose clause of the previous charter was changed slightly. The new version refers to "post-graduate research-ers" whereas the former designated "students and research-ers." Absent these modifications, the new charter is "com-pletely the same" as its forerunner.

Doctor Pfeiffer then described the foundation's present operation. He said that approximately 95 per cent of its

---

[1]The question is incorrectly drawn since the Alexander von Humboldt Stiftung is now located in Bad Godesberg, West Germany.

funds are derived from the West German government. The remainder is received from contributions made by third parties. Most of these gifts are given, as in this case, for specific charitable purposes. In his opinion the foundation would meet with no obstacles in applying the Wardwell gift in precise accordance with the testator's intention. He told of the manner in which other grants for specific purposes were being used and envisioned that the bequest herein[2] could be directed toward establishing a significant program for the musical education of Spanish students. The witness said that the foundation would be required to invest the principal amount in "safe" securities. He declared that in Europe the Humboldt Foundation ranks second only to the Rhodes Scholarship Fund in the number of fellowships made available to qualified students. The witness revealed that the testator had been a scholar of the foundation in the years 1926 and 1927 and that in 1940 he had made a substantial contribution to the organization.

Mr. Ernest C. Steefel, the only other witness heard, qualified as an expert on German law. He said that the foundation was an independent legal entity which complied with all the requirements of the German Civil Code. In his opinion, there was nothing in the foundation's charter nor in the Civil Code which would interfere with the administration of the testator's bequest in accordance with Mr. Wardwell's wishes. He stated that the foundation's charter authorized receipt of gifts from third parties, and obligated it to administer any such contribution in precise compliance with the directions of the donor. He noted that German law prohibits governmental interference with the foundation's administration of any such gift. In response to a question eliciting the remedies available under German law to residuary legatees to insure that the bequest was

---

[2]It was disclosed at the hearing in the superior court that the half share due the foundation is valued in excess of $600,000.

being administered in accordance with the testator's desires, Mr. Steefel indicated that in addition to having the right to institute a private action, the residuary legatees might also call upon German government at both state and federal levels to exercise supervisory powers to insure that the testator's intention is complied with. He likened this last remedy to the provisions of G. L. 1956, §18-9-9, which charges the attorney general with the responsibility of supervising the administration of all charitable trusts. Finally, the witness told of provisions in the German law dealing with the situation where the purpose of the testator might in the future become illegal or impossible to fulfill. He stated that under German law a doctrine very similar to our own *cy pres* doctrine exists and would become applicable should this occur.

Essentially, there are two legal arguments advanced herein by parties in opposition to the foundation's claim. First, it is argued that the gift to the foundation is invalid because the present claimant is not the intended beneficiary of the testator but a different legal entity established more than a year after Mr. Wardwell executed his will. Thus, they argue, the gift has lapsed. The other contention, championed by plaintiff bank, is that the testator intended the disputed portion of his residuary estate to be a testamentary trust which would be administered in our own state by his executors. This argument negates any intention on the part of the testator that the foundation should administer the fund. Finally, sundry arguments are found concerning the distribution of the residuary estate should we deem the bequest to have lapsed.

We have given careful consideration to the record certified herein and to all of the arguments made in support of the different interests involved. For reasons which follow, we are of the opinion that under paragraph Tenth of Hezekiah C. Wardwell's will, the Alexander von Hum-

boldt Stiftung of Bad Godesberg, West Germany is entitled to take a one-half share of the residuary of the testator's estate, and to administer the principal of that share by applying the income therefrom in accordance with the testator's unambiguous intent.

It is clear, that if the testator had died immediately after executing his will, his bequest to the Humboldt Foundation would not have suffered from the ambiguity alleged herein. At that time the foundation, existing under its 1925 charter, was situated in Berlin and was correctly described by the testator. Unquestionably, it would have been entitled to the bequest. Thus the issue presented is whether the foundation's subsequent readoption of its charter in 1953 should be deemed to vary this result. We think not.

Whenever ambiguity inheres in the language used by a testator, evidence dehors the will may be taken to ascertain his intention. *First Baptist Church* v. *Soban*, 77 R. I. 115, 73 A.2d 772; *Warwick Central Baptist Society* v. *Hohler*, 72 R. I. 445, 53 A.2d 494. Should two or more claimants seek to bring themselves within a misnomer, the one presenting the more convincing evidence is entitled to prevail. So also, where, as in this case, a group of legatees maintain that a legacy to another residuary legatee has lapsed, their claim is also subject to proof.

All of the evidence heard in the superior court was adduced on behalf of the foundation. None of this being contradicted, impeached or inherently improbable we are therefore bound, as the trier of fact in such cases, to accept this evidence in its entirety. See *Industrial National Bank* v. *Isele*, 101 R. I. 734, 227 A.2d 203; also *Michaud* v. *Michaud*, 98 R. I. 95, 200 A.2d 6; and *Horton* v. *Horton*, 46 R. I. 492, 129 A. 499. Thus, we deem conclusive the otherwise persuasive statements of Dr. Pfeiffer.

He stated unequivocally that defendant foundation from the standpoint of substance and legal continuity is the

same as that under which the testator benefited as a student and to which the testator had, during his lifetime, made a generous gift. In summary, the great weight of Dr. Pfeiffer's uncontradicted testimony clearly establishes that the present Alexander von Humboldt Stiftung of Bad Godesberg, Germany is the organization the testator intended to benefit. See *Alumnae Assoc. of Nurs. School* v. *Nugent,* 101 R. I. 26, 219 A.2d 763. Furthermore, the witness allayed any fear that the change made in the purpose clause of the foundation's charter could thwart the testator's intent. Doctor Pfeiffer testified that the purpose clause was relevant only to grants given the foundation by the Federal Republic of Germany and not to sums donated by individuals for specific purposes. He declared that if an individual made a contribution for a specific purpose, the funds would be expended in compliance with the donor's directive.

We reject the contention of lapse herein for an additional reason. Although we view our function in cases such as this as that of ascertaining the testator's intent, we cannot ignore other evidence found in the record from which logical ineferences flow. Doctor Pfeiffer's testimony established that it was the foundation itself, while operating under its 1925 charter, that initiated the readoption of that instrument in 1953. He indicated that the foundation's own board of directors approved the revision and thereafter submitted it for approval to the federal and state governments. These facts, we feel, warrant the inference that the foundation in readopting its charter achieved a result not unlike that effected when a corporation in our state amends its articles of incorporation. When this is done, certainly any resultant change does not affect that entity's continuity of existence. See 7 Fletcher Cyclopedia, *Corporations,* chap. 43, §3729, p. 952; *Wright* v. *Barnard,* (D. C. Del.) 248 Fed. 756; *Peterson* v. *Ball,* 211 Cal. 461, 296 P.

291; *Crutcher* v. *Scott Publishing Co.*, 42 Wash. 2d 89, 253 P.2d 925. Neither do we feel, on the basis of the evidence before us, that the foundation, in initiating a new charter, affected its existence in the manner suggested.

We now turn to the contention that the testator sought to create a trust to be administered by his executors for the foundation's benefit rather than to make an outright gift to a charitable corporation to be applied for a specific purpose. The primary assertion made in support of this proposition is that normally a testator would expect this result to insure that his directions concerning the legacy were carried out in full. We find this argument without merit.

Certainly, a testator controls the disposition of his property. His intention as to who shall administer a charitable trust created thereunder must be followed whenever possible. A need for construction of this intention arises only where uncertainty attaches to the language used. See *Rhode Island Hosp. Trust Co.* v. *Bateman*, 93 R. I. 116, 172 A.2d 84; *In Re Trusts Created by Butler*, 223 Minn. 196, 26 N. W.2d 204. In this case we do not feel that Mr. Wardwell's directions as to the application of the questioned bequest are in any way unclear. His choice of words indicates to us that their readily intelligible purport is to make a gift of the funds involved to the Alexander von Humboldt Stiftung for a specified purpose. Having made this determination, other speculation as to his intent is rendered meaningless.

With respect to the share of the residuary clause under consideration, we exercise a limited form of jurisdiction. Since the designated charitable corporation is a nonresident, we make only an initial inquiry as to the use to which the funds will be put. See 5 Scott, *Trusts* (3d ed.), §§560, 569, 570. After doing so, if we feel reasonably certain that the donor's intention will be fulfilled, then we must direct

the amount to be transferred to the nonresident forthwith. By reasonably certain, we mean no more than a determination that the designated legatee is in existence and capable of administering the trust as directed.

Here, the uncontradicted testimony of an expert witness convinces us that the defendant foundation is an organization capable of effectuating the testamentary purpose of Hezekiah C. Wardwell and is in fact compelled to do so under applicable provisions of German law. In short, we see no reason to bar the defendant foundation from administering the gift as directed.

The parties may present for our approval a judgment in accordance with this opinion to be entered in the superior court.

*John B. Kelaghan,* for plaintiff.

*Attorneys for Defendants:*
*Edwards & Angell, John H. Blish,* for Alexander von Humboldt Stiftung.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr.,* for San Juan DeDios Hospital.

*Tillinghast, Collins & Tanner, Benjamin A. Smith, Louise Durfee,* for Helen Herreshoff and Reverend Raymond T. Considine.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for Marguerite W. DuRocha and Elizabeth W. Lewis.

*Herbert F. DeSimone,* Attorney General, *W. Slater Allen, Jr.,* Special Assistant Attorney General.