377 A.2d 1308.

VIRGINIA BLACK *vs*. ANDREW BLACK.

AUGUST 9, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J.　This civil action was brought in the Superior Court to recover sums allegedly due on two judgments of the Supreme Court of New York for alimony arrearages.

The plaintiff's motion for summary judgment was granted and the defendant appeals.

The facts are somewhat complicated and are perhaps most easily comprehended if related chronologically. The starting point is a divorce action between the parties — both then New York residents — wherein the Supreme Court of New York, Rockland County, in March 1973 entered a decree granting plaintiff-wife's petition for a divorce and ordering defendant-husband to pay her alimony of $105 per week. Following the divorce, defendant left New York for Southbridge, Massachusetts, where he now resides; plaintiff remains a New York resident.

By September 1973, defendant had fallen behind in his alimony payments and plaintiff, resorting to §244 of the New York Domestic Relations Law, moved "by order to show cause" in the New York Supreme Court for entry of a money judgment for unpaid alimony for the period March 7 to September 19, 1973 and for a counsel fee. The defendant did not appear and defend, and a default judgment of $3,200 ("the first New York judgment") was entered against him.

Next in the chronology came the present action, which was commenced on March 6, 1974 by the filing of a complaint in the Superior Court in which plaintiff sought to recover the amount due on the first New York judgment plus the unpaid alimony that had accrued since September 19, 1973. Appended to the complaint is a certified copy of the first New York judgment, which recites that there had been "due proof of service upon [defendant] ANDREW BLACK." Coincident with the filing of her complaint, plaintiff moved ex parte for leave to attach certain real estate owned by defendant and located in the town of Scituate.[1] That motion was granted without notice to defendant and

---

[1] The plaintiff also moved for and was granted an attachement of a legacy of the defendant's in the hands of a Rhode Island executor. That attachment was subsequently vacated by stipulation.

without affording him an opportunity to be heard, and a writ of attachment issued with an ad damnum of $7,000. The sheriff's return in the case discloses that he sent copies of the complaint, the summons, the order granting the motion to attach and the writ of attachment to defendant at his home in Massachusetts by certified mail.

Thereafter, defendant, stating that he was appearing specially for the purpose of attacking jurisdiction, moved to dismiss the action for lack of jurisdiction. When that motion was denied, defendant answered the complaint. Before doing so, however, he conveyed all of his remaining interest in his Rhode Island real estate to a Massachusetts trustee.

Before the action then pending was heard, plaintiff, in September 1974, obtained another judgment against defendant in the Supreme Court of New York ("the second New York judgment"). This judgment was for $4,135, representing unpaid alimony for the period from September 19, 1973 to June 5, 1974 plus a counsel fee, and it recites that defendant's counsel had filed an affidavit in opposition thereto.

Next, plaintiff, with leave of court, filed a supplemental complaint based upon the second New York judgment. The defendant's answer to that complaint included, *inter alia*, a jurisdictional attack on the ground that the intervening conveyance of his Rhode Island real estate had terminated the Superior Court's jurisdiction over that property with respect to any claims not included in the original complaint. Thereafter, the court granted plaintiff's motion for summary judgment in the amount of $7,355, the total of the two New York judgments. The defendant then appealed.

Initially, defendant contends that the ex parte attachment on his property violated his right to due process under the fourteenth amendment to the Federal Constitution. If that position can be sustained, then, of course, the Superior Court acquired no jurisdiction over defendant's property, and his motion to dismiss on jurisdictional grounds should have been granted.

The attachment that defendant attacks was effected pursuant to G.L. 1956 (1969 Reenactment) §10-5-2, as amended by P.L. 1973, ch. 109, §1. That statute was enacted to bring our attachment procedures in line with the mandates of *Sniadach* v. *Family Fin. Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969), and while it prescribes notice to a defendant and an opportunity to be heard as prerequisites to a valid prejudgment attachment,[2] it expressly exempts postjudgment attachments from that requirement.[3] The defendant asserts, however, that the Legislature could not constitutionally exempt postjudgment attachments from the hearing and notice requirements and that, even if it could, the exemption would be valid only with respect to domestic, not foreign, judgments.[4]

We need not address those arguments, however, because the question here is not the constitutionality of ex parte postjudgment attachments in general, but the constitutionality of an ex parte postjudgment attachment made for the purpose of

---

[2]The United States Supreme Court has in recent years considered the circumstances in which due process requires notice and a hearing prior to a prejudgment seizure of property. *North Georgia Finishing Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975); *Mitchell* v. *W.T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556, (1972); *Sniadach* v. *Family Fin. Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969). The court, however, has not yet passed on the application of the principles enunciated in those cases to postjudgment property seizures. For discussion of that question see *First Nat'l Bank* v. *Hasty*, 410 F. Supp. 482 (E.D. Mich. 1976); Dunham, *Post-Judgment Seizures: Does Due Process Require Notice and Hearing?*, 21 S.D.L. Rev. 78 (1076).

[3]General Laws 1956 (1969 Reenactment) §10-5-2, as amended by P.L. 1973, ch. 109, §1, provides in pertinent part:

> In all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his personal estate and real estate, may be attached without any further hearing by the court or notice to the defendant."

[4]The defendant neither cites any authority nor suggests any sound reason — nor do we know of any — why stricter constitutional standards should govern the issuance of a writ of attachment in aid of a judgment of a sister state's court than apply when the judgment being enforced is that of a local court.

securing *quasi in rem* jurisdiction in the Superior Court. That issue was settled long ago in *Ownbey* v. *Morgan*, 256 U.S. 94, 41 S. Ct. 433, 65 L. Ed. 837 (1921). In that case the Court upheld the acquisition of *quasi in rem* jurisdiction by means of an attachment of a nonresident's property without prior notice or an opportunity to be heard. *Id.* at 98-99, 110-12, 41 S. Ct. at 434, 438, 65 L. Ed. at 840-41, 846. Of course, many due process concepts have changed substantially since *Ownbey* was decided. But in *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) — in which the Florida and Pennsylvania prejudgment replevin procedures were held unconstitutional — the Court said that "[t]here are 'extraordinary situations' that justify postponing notice and opportunity for a hearing." *Id.* at 90, 92 S. Ct. at 1999, 32 L. Ed. 2d at 575. Then, citing the *Ownbey* case with apparent approval, it went on to indicate that the attachment of property without prior notice and hearing was one of those situations when it was "necessary to secure jurisdiction in state court — *clearly a most basic and important public interest." Id.* at 91 n.23, 92 S. Ct. at 1999 n.23, 32 L. Ed. 2d at 576 n.23 (emphasis added). Thus, although the rationale of *Ownbey* may not be in accord with some current judicial thinking, its holding has not been questioned and is therefore controlling here. Consequently, the attachment of defendant's real estate on the original complaint for the purpose of securing *quasi in rem* jurisdiction, though without prior notice and hearing, did not deprive him of property without due process of law.

Another jurisdictional objection pressed by defendant is that the disposal of his interest in the attached Rhode Island real estate prior to plaintiff's filing the supplemental complaint deprived the Superior Court of a basis for exercising *quasi in rem* jurisdiction over that property with respect to any claim not included in the original complaint.

Consideration of this issue can be deferred, however, pending a determination of the effect of the answer filed by

defendant following the denial of his motion to dismiss the original complaint. In that answer, defendant did not indicate that he was defending on the merits for the sole purpose of protecting his interest in the attached property and that he did not intend thereby to submit himself generally to the court's jurisdiction. Instead, he both responded to the merits and repeated the same jurisdictional objections earlier advanced in the motion to dismiss. By stipulation to which defendant was a party, however, those jurisdictional objections were stricken from the answer because they had previously been considered and rejected when his motion to dismiss was denied. All that remained was defendant's answer on the merits.[5] If he thereby submitted himself personally to the jurisdiction of the court, and if that submission was effective with respect to the claim made in the supplemental complaint as well as those in the original complaint, then the Superior Court had jurisdiction to try the supplemental complaint and to enter a personal judgment thereon against defendant, notwithstanding his intervening disposition of the attached property. We believe, for the reasons that follow, that there was such a submission.

The defendant's answer on the merits constituted a general appearance, *Holmes* v. *Milligan*, 131 N.J.L. 125, 130-31, 36 A.2d 15, 18 (1943); *Barber* v. *Calder*, 522 P.2d 700, 702 (Utah 1974); and by appearing generally he submitted himself to the jurisdiction of the court at least with respect to the original complaint, which was the only one on record when the answer was filed. *Mack Constr. Co.* v. *Quonset Real Estate Corp.*, 84 R.I. 190, 194, 122 A.2d 163 (1956); *Industrial Trust Co.* v. *Rabinowitz*, 65 R.I. 20, 22, 13 A.2d 259, 260 (1940). Whether the appearance also constituted a submission of his person to the jurisdiction with respect to the supplemental complaint is another question,

---

[5] The defendant asserts in his brief that his answer did not go to the merits. We cannot agree. The answer responded to the complaint by paragraphs, admitting some of its allegations and denying others. If that is not an answer on the merits, we are at a loss to know what it is.

the answer to which hinges on whether the trial justice erred when, in reliance on Super. R. Civ. P. 15(d),[6] she permitted plaintiff to file the supplemental complaint.

A few older federal cases hold that under Fed. R. Civ. P. 15(d), which is identical to our rule, the only purpose of a supplemental complaint is to update or otherwise aid the claim set forth in the original complaint; consequently, a new and separate claim cannot be asserted in a supplemental complaint, but rather must be the subject of a separate and independent lawsuit.[7] *E.G., General Bronze Corp.* v. *Cupples Prods. Corp.*, 9 F.R.D. 269 (E.D. Mo. 1949). This view has been criticized, however, as being contrary to the basic policy of the rules "that a party should be given every opportunity to join all of his grievances against another party regardless of when they arose," 6 Wright & Miller, *Federal Practice & Procedure* §1506 at 547 (1971); and in a majority of the more recent federal cases supplemental complaints are not barred merely because they set forth new claims for relief. *See* Annot., 28 A.L.R. Fed. 129, 175-83 (1976). As Professor Moore puts it:

> "While the matters stated in a supplemental complaint should have some relation to the claim set forth in the orig-

---

[6]Super. R. Civ. P. 15(d) provides:

> "Suplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading, setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor."

[7]There are yet older cases, decided before the advent of modern rules of procedure, holding that a general appearance is effective only with respect to the precise proceeding and cause of action to which the party appears and that, consequently, an appearance to an original complaint is not an appearance to an amended complaint stating a new and different cause of action. *E. G., Durabilt Steel Locker Co.* v. *Berger Mfg. Co.*, 21 F.2d 139, 140 (N.D. Ohio 1927); *Hay* v. *Tuttle*, 67 Minn. 56, 59, 69 N.W. 696, 697 (1896). In our judgment these cases have no precedental weight under the new rules, which have greatly liberalized the permissive joinder of claims.

inal pleading, the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but should only be a factor to be considered by the court in the exercise of its discretion, along with such factors as possible prejudice or laches * * *." 3 Moore, *Federal Practice* ¶15.16[3] at 1091 (2d ed. 1974); *accord*, 6 Wright & Miller, *supra*, §1506 at 550-51.

The defendant protests the unfairness of a procedure that would permit the use of a supplemental complaint as a means of acquiring jurisdiction over him with respect to the second New York judgment when it would have been impossible to obtain personal jurisdiction had plaintiff been compelled to bring an independent suit for the same claim.[8]

Professor Moore, while conceding that a protest like defendant's is "[t]he chief objection to allowing new claims to be brought in by supplemental pleading * * *," 3 Moore, *supra*, ¶15.16[3] at 1091, rejects it as having

"los[t] much of its force in the light of the decision in *Freeman* v. *Bee Machine Company*, [319 U.S. 448, 63 S. Ct. 1146, 87 L. Ed. 1509 (1943),] where the Supreme Court held that a new claim could be stated by amendment, after removal, even though the venue would not have been good if the claim had been asserted in an independent action." *Id.* at 1091-92.

By analogy, defendant in this case, having submitted to the jurisdiction, was thereafter foreclosed from claiming that he was present in court only for the limited objective of answering to the original complaint. Instead, he was there for all phases of the litigation and was subject to personal liability on any claim within the proper scope thereof under the Superior Court Rules of Civil Procedure, including Rule 15(d). We perceive no unfairness in this procedure. Rule 15

---

[8]Similar arguments have been rejected, albeit in an exceedingly brief and conclusory fashion, by at least two federal courts. *Lynam* v. *Livingston*, 257 F. Supp. 520, 525 (D. Del. 1966); *Otis Elevator Co*, v. *570 Bldg. Corp.*, 35 F. Supp. 348, 349 (E.D.N.Y. 1940).

permits a supplemental pleading to be filed in order to set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." The claim made by plaintiff in the supplemental complaint meets that description and is directly related to those set forth in the original complaint. For these reasons, and also because we know of no sound reason why in the interests of judicial economy this entire controversy should not be disposed of in one suit, we find that the trial justice did not abuse her discretion in granting leave to file the supplemental complaint.

We come then to the only issue on the merits in this case: the validity and enforceability of the first New York judgment.[9] The Constitution of the United States requires that every state give full faith and credit to the judgments and decrees of every other state.[10] *Trustees of the Sheppard & Enoch Pratt Hosp.* v. *Smith*, 114 R.I. 181, 183, 330 A.2d 804, 805 (1975); *see Rathbone* v. *Terry*, 1 R.I. 73, 75-77 (1837). "Full faith and credit," however, means only such faith and credit as the judgment sought to be enforced has in the courts of the state where rendered. 28 U.S.C.A. §1738 (1966);[11] *New York ex rel. Halvey* v. *Halvey*, 330 U.S. 610,

---

[9]The defendant apparently concedes that the second New York judgment is valid. The second judgment differs from the first in that defendant's attorney appeared in opposition to its issuance.

[10]U.S. Const. art. IV, §1 provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

[11]28 U.S.C.A. §1738 (1966), enacted in the exercise of the express constitutional grant of power to Congress to implement the full faith and credit clause, *see* note 10 *supra*, provides in pertinent part:

"The records and judicial proceedings of any court of any * * * State, Territory or Possession [of the United States], or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and

614-15, 67 S.Ct. 903, 906, 91 L. Ed. 1133, 1136 (1947). Consequently, sister-state judgments that are invalid or subject to collateral attack where rendered will not be recognized when their enforcement is sought in this state. *Israel v. National Bd. of YMCA*, 117 R.I. 614, 620, 369 A.2d 646, 650 (1977).

We focus, then, on the first New York judgment to ascertain whether it was valid in New York and therefore enforceable here, or invalid there and therefore unenforceable here. It was obtained pursuant to §244 of the New York Domestic Relations Law, which prescribes a procedure for obtaining a judgment for arrears in alimony.[12] As construed by the New York courts, that enactment "does not contemplate the rendition of a new judgment in the classical sense," but instead treats an application for relief thereunder as "part of or incidental to the old judgment," *Ageloff* v. *Ageloff*, 207 Misc. 804, 806, 140 N.Y.S.2d 424, 426 (Sup. Ct. 1955), and as a motion in an action. *Haskell* v. *Haskell*, 6 N.Y.2d 79, 81, 160 N.E.2d 33, 34, 188 N.Y.S.2d 475, 476, *cert. denied,* 361 U.S. 876, 80 S. Ct. 139, 4 L. Ed.

---

Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

"Such * * * records and judicial proceedings or copies thereof, so authenticated, shall have *the same full faith and credit* in every court within the United States and its Territories and Possessions *as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.*" (Emphasis added.)

[12]N.Y. Dom. Rel. Law §244 (McKinney 1977) provides in pertinent part:

"Where the husband in an action for divorce * * * makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court in its discretion may make an order directing the entry of judgment for the amount of such arrears, or for such part thereof as justice requires having a regard to the circumstances of the respective parties * * * . The application for such order shall be upon such notice to the husband * * * as the court may direct. Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. The relief herein provided for is in addition to any and every other remedy * * * to which the wife may be entitled under the law * * * ."

2d 114 (1959.)[13] Consequently, although a §244 application must "be upon such notice to the husband * * * as the court may direct," fullfillment of that requirement does not demand service of additional personal process within the state in order to acquire personal jurisdiction over a defendant, *Haskell* v. *Haskell, supra* at 81-82, 160 N.E.2d at 34, 188 N.Y.S.2d at 476-77; *Ageloff* v. *Ageloff, supra* at 806, 140 N.Y.S.2d at 426, and extraterritorial service of the requisite notice, whether in person or by mail, is clearly sufficient. *See Smith* v. *Smith,* 217 F.2d 917 (6th Cir. 1954); *Mendelow* v. *Mendelow,* 29 Misc. 2d 542, 216 N.Y.S.2d 316 (Sup. Ct. 1961); *Ageloff* v. *Ageloff, supra; Durlacher* v. *Durlacher,* 173 Misc. 329, 17 N.Y.S.2d 643 (Sup. Ct. 1940). Indeed, we do not understand defendant to claim otherwise. Nor does he claim that New York cannot constitutionally assert continuing personal jurisdiciton over him for the purpose of acting under §244. Rather, he argues that a money judgment entered under that section is unenforceable unless it recites that an order directing the type of notice to be given has been entered and that the wife has complied with that order.

In support of that contention, defendant relies upon *Fishback* v. *Fishback,* 4 Misc. 2d 760, 158 N.Y.S.2d 388 (Sup. Ct.), *appeal dismissed,* 3 App. Div. 2d 828, 165 N.Y.S.2d 731 (1957). The opinion in that case is brief almost to the point where it affects its clarity. Apparently, however, the plaintiff there gave notice by mail to the nonresident defendant of her motion for a judgment for alimony arrears without having first applied to the court for an order directing the type of notice to be given. Although the court said that the omission was fatal to the application, nothing in §244 or in *Fishback* — or in any other New York opinion that has been brought to our attention — even remotely suggests that the judgment in a §244 proceeding will be invalid unless it discloses on its face that an order

---

[13]The New York cases cited in this opinion were not decided under §244 but under its predecessor, Civ. Prac. Act §1171-b, 1948 N.Y. Laws, ch. 212, §7. Section 244 is, however, identical in all relevant respects to §1171-b.

directing the type of notice to be given has been entered and obeyed.

In the present case, defendant concedes that notice was mailed to him at his home in Massachusetts, and he does not deny receiving it. Nor would his position be strengthened had he not made that concession, for the recital in the judgment that due proof of service upon him had been established is prima facie evidence that service was in fact made; absent anything to the contrary in his pleadings or affidavit, that recital is conclusive. *Peeples* v. *Peeples*, 103 Ga. App. 462, 468, 119 S.E.2d 710, 715 (1961); *Portland Maine Publishing Corp.* v. *Eastern Tractors Co.*, 289 Mass. 13, 16-17, 193 N.E. 888, 890 (1935). Accordingly, we hold that the first New York judgment is valid and enforceable in New York and therefore entitled to full faith and credit in the courts of this state.

The defendant complains also that the attachment of his property in the amount of $7,000 was excessive, inasmuch as the original complaint sought only $5,615. That issue, however, is not properly before us. Section 10-5-18 provides the exclusive procedure for obtaining the partial release of a regularly and properly made attachment of real estate.[14] *Seiler Coal Co.* v. *Superior Court*, 47 R.I. 76, 129 A. 811 (1925); *Wood* v. *Watson*, 20, R.I. 223, 225, 37 A. 1030, 1030 (1897). There is no indication in the record that the

---

[14]General Laws 1956 (1969 Reenactment) §10-5-18 provides:

"Reduction of damages or partial release of property. — If the defendant in any writ shall deem the damages laid therein excessive, or if the property, either real or personal, held under any attachment, shall greatly exceed in value the amount of the damages laid in the writ, the defendant may, at any time before final judgment or decree, complain in writing to any justice of the court to which the writ is returnable, or to the superior court if said writ shall be pending in the superior court upon appeal from a district court, requesting the reduction of the amount of the damages or a release of a portion of the property attached; and such justice or court may, after due notice to the plaintiff in the writ, or to his attorney, and upon cause shown, order the damages to be reduced, or a part of the property attached to be released.

defendant ever resorted to that proceedure for the relief which he now claims as his due. Having failed to properly raise the issue of excessiveness at the Superior Court level, he is precluded from doing so here at this stage of this proceeding. *Tente* v. *Tente*, 112, R.I. 636, 641, 314 A.2d 149, 152 (1974); *Ferruolo* v. *Columbus Exch. Trust Co.*, 61 R.I. 77, 83, 200 A. 451, 453 (1938).

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

### ADDENDUM

In *Shaffer* v. *Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L. Ed. 2d 683 (1977) the United States Supreme Court overruled the century-old case of *Pennoyer* v. *Neff.*, 95 U.S. 714, 24 L. Ed. 565 (1977) which permitted acquisition of *quasi in rem* jurisdiction based on an attachment or seizure of property present in the jurisdiction. *Id.* at 206, 97 S. Ct. at 2581, 53 L. Ed. 2d at 699. Henceforth, acquisition of such jurisdiciton will depend upon satisfying the "fair play and substantial justice" standards of *International Shoe Co.* v. *Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) and its progeny. *Id.* at 211-12, 97 S. Ct. at 2583-84, 53 L. Ed. 2d at 702-03.

Under the new rule, however, a post-judgment attachment of property in one state to realize on a debt will satisfy the new standards if, as in this case, a court of competent jurisdiction in another state has determined the existence of the debt. *Id.* at 210-11, n.36, 97 S. Ct. at 2583 n.36, 53 L. Ed. 2d at 702, n.36.

*Henry H. Katz*, for plaintiff.

*Gorham & Gorham Incorporated, Arthur M. Read II*, for defendant.