DECISION
Harry C. Struck ("Struck") brings this Breach of contract action against Wayne Cady ("Cady") for failure to repay a $60,000.00 loan. Struck moves for summary judgment alleging that there are no material facts in dispute. Cady entered into a contract with Struck for a loan of $60,000.00 and has failed to repay it. Cady argues that he is not obligated to repay the loan based upon the "Mutual, General and Irrevocable Release" entered into between struck and IMC Mortgage Compant ("IMC"). Relying on this release Cady moves to dismiss Struck's complaint.
 FACTS AND TRAVEL
Struck was the president of a defunct business known as Residential Mortgage Company ("RMC"). Cady was hired to serve as the national sales manager. Around the same time Cady was hired RMC was sold to IMC (collectively RMC/IMC). As part of Cady's employment contract, he was given eight shares of RMC/IMC common stock on September 20, 1997. As a result of the transfer, Cady incurred income tax liability that he was unable to afford at that time. In order to make this payment, Struck personally loaned Cady $60,000.00 on April 14, 1998 to make this tax payment. The parties executed a promissory note that indicated that Cady was to repay the $60,000.00 plus interest at 7.5% per annum, no later than November 15, 1998.
On October 13, 1998 Cady was terminated from his employment. As a result of this termination he filed suit in Providence Superior Court, case number 98-5400, alleging that he was wrongfully terminated. Judgment was entered in that case for Cady. The case, at the time of the hearing before this Court, is before the Rhode Island Supreme Court on appeal.
On November 15, 1998 Cady had failed to pay off his debt with Struck as required by note. In response Struck wrote Cady seeking the payment. Cady refused to pay and Struck filed the instant action for Brach of Contract on December 8, 1998. Cady Counterclaimed, alleging that he was injured by his wrongful termination. This matter is currently before this Court on Struck's motion for summary judgment and Cady's motion to dismiss. In ruling on these motions the Court reviewed evidence outside of the Complaint and will thus treat Cady's motion to dismiss as a motion for summary judgment in accordance with Rule 12(b)(6).
STANDARD OF REVIEW
Both Struck and Cady agree that this case is governed by Florida's substantive law. However, it should be noted that the Rhode Island Supreme Court has held that `"the procedural law of the forum state applies even if a foreign state's substantive law is applicable."' Statev. Briggs, 756 A.2d 731, 735 (R.I. 2000) (citing Israel v. National Boardof young Men's Christian Association, 117 R.I. 614, 620, 369 A.2d 646, 650 (1977)).
Summary Judgment
Summary judgment should be granted `"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."' Mitchell v. Mitchell, 756 A.2d 179 (R.I. 2000) (quotation omitted). "In reviewing these materials, the motion justice should draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,711 A.2d 628, 631 (R.I. 1998). "The movant bears an initial burden of showing that no genuine issue of material fact exists and that therefore the case need not be submitted to the finder of fact." Id. "If the movant satisfies this initial burden, the nonmovant must either point to evidentiary materials already before the court or come forward with its own competent evidence showing the existence of a genuine disputed issue of material fact." Id.
Motion to Dismiss
`"The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint, which must be determined without resort to extraneous materials."' Laurence v. Sollitto, 788 A.2d 455, 457 (R.I. 2002). When affidavits or other evidence is presented to the court on such a motion the court is allowed to look at such materials. However, the rule "provides that when the materials are `not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."' Id (citation omitted).
 INTERPRETATION OF RELEASE
Both parties agree that this case is governed by Florida substantive law. The issue raised through these motions is whether Struck is entitled to judgment as a matter of law on the issue of Breach of Contract, when Cady failed to pay off his note. Cady contends that he is entitled to a dismissal of the case because he was released from any obligation on the note when Struck entered into the "Mutual, General, and Irrevocable Release" ("Release"). Struck argues that the release does not and never was intended to release any claims that he had against Cady, and as a result he is entitled to summary judgment on the note.
Florida law states that when reviewing a release, "[a]s with contracts generally, the language used in the release is the best evidence of the parties' intent. When that language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning."Hurt v. Leatherby Insurance Co., 380 So.2d 432, 433 (Fla. 1980) (citingBoat Town USA v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15
(Fla. 4th DCA 1978)). Furthermore, the Florida Supreme Court has held that it is a `"deeply rooted principle of Florida Law that the intent of the parties controls interpretations of their releases."' Rosen v.Florida Insurance Guaranty Assoc., 802 So.2d 291, 295 (Fla. 2001) (quoting Auto-Owners Ins. Co. v. St. Paul Fire Marine Ins. Co.,547 So.2d 148, 150 (Fla. 2d DCA 1989) (citations omitted)).
In the instant case, Struck entered into the Release with IMC in conjunction with the acquisition of RMC by IMC. Struck has stated that "IMC's acquisition of RMC ultimately created disputes between IMC and [Struck] concerning [his] employment contract, [his] rights as a shareholder of IMC, and other matters relating to the business dealings between IMC and [Struck]." (Stuck Aff. ¶ 6.) As part of the resolution of these differences Struck entered into the Release with IMC. The Release states as follows:
 "In connection with the Acquisition, IMC executed an employment agreement (and any amendments thereto) in favor of Struck and Struck has various claims relating to, among other things, the Acquisition Agreement, the Acquisition, the Transaction Documents, the employment agreement of Struck, Struck's acquisition, ownership and retention of common stock of IMC and rights to additional common stock of IMC and other matters relating to the business dealings between IMC and Struck (collectively, the "Struck Claims")." (Mutual, General, Irrevocable Release. ¶ B.)
As part of the Release the parties engaged in a "Covenant Not To Sue." Specifically, the Release states:
 "Struck covenants and agrees never to institute or cause to be instituted a suit or any other form of action or proceeding of any kind or nature against the IMC Released parties, or any of them, by reason of or in connection with the Struck Claims . . . ." (Mutual, General, Irrevocable Release. ¶ 3(a).)
Cady argues that he is covered by the "Covenant Not To Sue." Specifically, he points to paragraph 1 which provides:
 "Released Parties. For purposes of this Release, (i) the "IMC Released Parties" include IMC and each and every one of its affiliates, its officers, directors, employees, common shareholders, preferred shareholders, lenders, lawyers, accountants and agents an the successors and assigns of each of such parties; . . . ." (Mutual, General, 
Irrevocable Release. ¶ 1.)
Cady contends that he is a released party under this definition, because he was an IMC common shareholder. Furthermore, he contends that the Release provides, in paragraph 2, that the parties are released "from and against all claims, demands, proceedings, causes of action, orders, obligations, contracts, agreements, debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected . . ." (Mutual, General, Irrevocable Release. ¶ 2.) Cady argues that looking at these sections of the Release as a whole, it is clear that Cady is a party that was included in the Release and is thus relieved from liability on the note. The Court does not find this argument persuasive.
Reviewing the Release in conjunction with the parties' motions for Summary Judgment, this Court finds that the document is clear on its face that the Stuck and IMC agreed only to release those individuals identified in the Release. In no way did Struck and IMC, through this document, release Cady from his obligation to Struck. The Release is clear that Struck released any rights that he had to sue on "Struck Claims." The Release also clearly defines what constitutes a "Struck Claim" in Section B. It is clear from the language in the Release that Cady's personal obligation is not a "Struck Claim."
As previously stated, Florida Laws requires that when the language in a release is "clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning." Hurt, 380 So.2d at 433. This Court finds that the language in this release is clear and unambiguous. The Court thus relies on the language in the release and finds that Struck did not release Cady from any obligations to repay his debt on his note with Struck.
This Court also notes that even if it were to find that the Release was ambiguous, it is still undisputed from the facts in evidence that Struck and IMC never intended to release Cady from any of his obligations. Specifically, this Court points to the affidavits of Struck and Robert F. Melone (Vice President and General Counsel of IMC). Struck states that "[w]hen [he] executed the Release [he] intended to release IMC and its officers, directors, shareholders and other agents from liability arising out of the business dealings between IMC and [Struck]." (Struck Aff. ¶ 8.) "[Struck] did not intend to release Cady from his personal debt to [him]." Id at ¶ 9. This is further supported by Mr. Melones affidavit in which he states that "[t]he Release was not intended to excuse the shareholders of IMC for any personal obligations they owe Struck." (Melone Aff. ¶ 5.) Furthermore, "IMC did not intend the release to excuse Cady for any personal obligation he owes Struck." Id at ¶ 6.
Thus it was not the intent of the parties, who executed the Release, to excuse Cady from any personal obligations he had with Struck. Therefore, even if the language in the Release were ambiguous it is clear from the intent of the parties to the Release, not just Struck, that Cady was not intended to be personally involved in the release.
This Court finds that the Release is clear and unambiguous. It was not the intent of Struck or IMC, to release Cady from his responsibility to repay the note he executed with Struck. This Court rules in favor of Struck's motion for summary judgment on his Complaint for Breach of Contract and denies Cady's motion to dismiss, which this Court treats as a motion for summary judgment.
Counsel shall submit the appropriate judgment for entry by the Court after notice.