**SHEER ASSET MANAGEMENT PARTNERS**

v.

**LAURO THIN FILMS, INC.**

**No. 98–414–Appeal.**

Supreme Court of Rhode Island.

June 18, 1999.

Robert D. Wieck, Robert B. Berkelhammer, Providence, for Plaintiff.

Michael A. Gamboli, Brian J. Spero, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

**O P I N I O N**

PER CURIAM.

This appeal was brought by Michael Lauro (Lauro), on behalf of Lauro Thin Films, Inc. (LTF), challenging an order by the trial justice denying LTF's motion to disallow a claim filed by Sheer Asset Management Partners (SAMP).[1] Lauro is a one-third shareholder of the outstanding common stock of LTF and maintains that certain transactions entered into between the parties were usurious, and therefore invalid.

1. DB Thin Films, LLC is the successor by assignment to the claim of SAMP in this proceeding.

## Facts and Travel

In January of 1993, LTF and SAMP entered into a loan agreement, whereby SAMP would loan $450,000[2] to LTF for the purpose of purchasing machinery and equipment. In exchange for the note, LTF executed an agreement which granted SAMP a security interest in the equipment purchased with the loan proceeds. In addition, LTF transferred certain intellectual property rights to SAMP and entered into an agreement which granted LTF a license to use the intellectual property while paying royalties to SAMP. According to Lauro, the note, the security agreement, the assignment, and the licensing agreement were executed as part of a single transaction. The trial justice agreed and denied the requested relief.

The loan transaction involves three jurisdictions, namely: New York, Connecticut, and Rhode Island. The security agreement contained a choice of law provision which stated that the "[s]ecurity [a]greement shall be governed by, and construed in accordance with, the laws of the State of Connecticut," which is also the state of incorporation of SAMP. In addition, the secured note made reference to Connecticut law, although there was no specific choice of law provision contained in the note document. SAMP's corporate offices are located in New York, and the partners of SAMP are also residents of New York. Significantly, the contract required LTF to perform their obligations under the agreement through payments to SAMP's corporate office located in New York. The licensing agreement contained a choice of law provision which stated that the "[a]greement, and the performance thereof by the parties hereto, shall be interpreted in accordance with the laws of the State of New York."[3] Finally, Lauro is a resident of Rhode Island and LTF is a Rhode Island Corporation located in Woonsocket, Rhode Island. According to Lauro, all negotiations for the note took place in Rhode Island.

LTF subsequently was placed in temporary receivership because of apparent financial difficulties.[4] When the loan was transformed into a secured claim, Lauro then filed a motion to disallow the claim (filed by SAMP), void lien, and compel turnover of property to LTF. Lauro's argument in support of disallowing the claim was that the entire transaction was structured so that the total interest payments exceeded the amount permissible under Rhode Island usury law.[5] The trial justice, however, determined that pursuant to the agreement of the parties, Connecticut law governed the basic loan documents. He continued his analysis and determined that even if the choice of law provision was invalid, the transaction would be governed by the law of the place of performance, which was New York. Finally, the trial justice determined that both New York, and Connecticut consistently decline to recognize the usury defense in a loan transaction, and therefore, the law of either jurisdiction would support the denial of Lauro's motion to disallow the claim. Lauro now appeals this determination.

## Analysis

We note at the outset that a potential issue arises as to whether the denial of a motion to disallow a claim is sufficient to

2. This loan amount was subsequently amended by an "Amendment to Secured Note" and the amended note was in the amount of $508,750.

3. There was also a subordination agreement entered into with a third party, Fleet Bank, which was to be governed by Rhode Island Law, however, we agree with the trial justice that this does not negate the choice of law provisions contained in the other documents.

4. On December 12, 1997, the trial justice appointed a permanent receiver in succession to the appointment of the temporary receiver for the protection, maintenance, and preservation of LTF's assets and property.

5. Lauro argues that the transfer of the intellectual property and the licensing back of that property was a thinly disguised attempt by SAMP to obtain additional interest payments on the note. It is this additional royalty payment that Lauro argues rendered the entire loan transaction void as usurious.

establish an appealable order under G.L. 1956 § 9–24–7. Section 9–24–7 permits an appeal to be taken from certain actions that are not otherwise considered final judgments. Section 9–24–7 reads:

> "**Appeals from interlocutory orders and judgments.**—Whenever, upon a hearing in the [S]uperior [C]ourt, an injunction shall be granted or continued, or a receiver appointed, or a sale of real or personal property ordered, by an interlocutory order or judgment, or a new trial is ordered or denied after a trial by jury, an appeal may be taken from such order or judgment to the [S]upreme [C]ourt in like manner as from a final judgment, and the appeal shall take precedence in the [S]upreme [C]ourt."

Furthermore, the *McAuslan* Doctrine establishes a mechanism whereby an order that may be in the strict sense interlocutory, has such elements of finality and potential injurious consequences that it requires an immediate review. *See McAuslan v. McAuslan*, 34 R.I. 462, 472, 83 A. 837, 841 (1912). Although certain interlocutory determinations may be final under § 9–24–7 and the *McAuslan* Doctrine, this issue was neither raised, nor argued by either party. Therefore, we shall assume, without deciding that this is a proper appeal possessing the requisite "elements of finality" that is necessary to invoke the jurisdiction of this Court.

Lauro argues to this Court that the trial justice erred as a matter of law in declining to apply Rhode Island law to the subject transaction and by refusing to find that the subject transaction violated the Rhode Island usury statute. We reject this argument for the following reasons.

■ As a general rule, parties are permitted to agree that the law of a particular jurisdiction will govern their transaction. *See Owens v. Hagenbeck–Wallace Shows Co.*, 58 R.I. 162, 173, 192 A. 158, 164 (1937); *see also Bird v. Centennial Insurance Co.*, 11 F.3d 228, 231 n. 5 (1st Cir. 1993). Rhode Island law recognizes choice of law clauses, with some limitations. *Owens*, 58 R.I. at 172, 192 A. at 164. For example, this Court has previously stated that "the right of parties to a contract to have their reciprocal duties and obligations under that contract governed by the law of some particular jurisdiction is limited to the selection or stipulation by them of the law of a jurisdiction which has a real relation to the contract." *Id.* at 174, 192 A. at 164; *see also Providence & Worcester Railroad Co. v. Sargent & Greenleaf, Inc.*, 802 F.Supp. 680, 684 (D.R.I.1992). Moreover, the Restatement (Second) *Conflict of Laws* § 187(2)(a) (1971) states that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied * * * unless * * * the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Among those jurisdictions in which there is a reasonable basis for choosing the law of that jurisdiction are: (1) the place of performance of one of the parties; (2) the domicile of one of the parties; or (3) the principal place of business of a party. *Id.*, cmt. f at 567.

■ In this matter, the parties have chosen the law of Connecticut to govern the agreement and the underlying loan documents. We recognize their right to do so and will not interfere with that right, considering that there was a reasonable basis for having chosen Connecticut law to govern the transaction. As indicated, the original lender was a Connecticut corporation, which according to the Restatement, is sufficient to create a reasonable relation to the contract. Accordingly, we will not interfere with the agreement of two commercial entities to designate a particular jurisdiction to govern the transaction, so long as that jurisdiction has a real relation to the contract. Therefore, Lauro's appeal is denied and dismissed. The order of the Superior Court is affirmed and the papers in this case are remanded to the Superior Court.