Harold MARK, Individually, and as Co–Executor of the Estate of Haskel Mark et al.

v.

CONGREGATION MISHKON TEFILOH et al.

No. 98–557–M.P.

Supreme Court of Rhode Island.

Feb. 15, 2000.

Michael K. Marran, George H. Rinaldi, Providence, Seth A. Perlmutter, Cranston, for Plaintiffs.

Michael Coleman, Cranston, for Defendants.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case is before us on the defendant Congregation Mishkon Tefiloh's petition for writ of certiorari, seeking review of a Superior Court order that denied the defendant's motion to strike plaintiffs' claims for punitive damages. The motion to strike was purportedly made pursuant to this Court's holding in *Palmisano v. Toth*, 624 A.2d 314 (R.I.1993).

This case arises from an alleged contract formed in 1967 between the late Haskel Mark (Haskel) and the defendant Congregation Mishkon Tefiloh (Congregation) concerning the purchase of two cemetery plots in Lincoln Cemetery in Warwick, Rhode Island. At that time, Congregation held a number of grave sites within a section of Lincoln Cemetery. The plaintiffs [1] alleged that from 1967 through 1992, Haskel paid a "perpetual care" fee for these two grave sites to Chased Schell Amess Association (the Association), which operates the cemetery. When Haskel died in 1992, plaintiffs contacted the Association to arrange for the opening of one of the two cemetery plots. It was at that point that plaintiffs discovered that the grave site that had been reserved for Haskel was unavailable because it had been resold by Congregation in 1991. The plaintiffs alleged that inasmuch as Haskel had to be buried expeditiously in accordance with the tenets of the Jewish faith, an alternate grave site outside the confines of defendant Congregation's section of the ceme-

---

1. The plaintiffs in this case are Harold Mark and G. Tamra Baron, both individually and as co-executors of the estate of Haskel Mark and Marion Mark.

tery was purchased by the Mark family. Thereafter, plaintiffs filed suit on July 22, 1994, naming both Congregation and the Association as defendants. While this litigation was pending, Marion Mark, Haskel's widow, also died and was buried next to her husband at the alternate grave site. The defendant Congregation then filed a motion for partial summary judgment with regard to certain counts of plaintiffs' amended complaint. On October 20, 1998, the motion justice denied without prejudice defendant's motion for partial summary judgment in regard to plaintiffs' claims for punitive damages. On October 21, 1998, Congregation submitted a motion to strike plaintiffs' claims for punitive damages pursuant to this Court's ruling in *Palmisano*. On November 5, 1998, the Presiding Justice of Superior Court denied the motion to strike and held that a defendant is not entitled to an evidentiary hearing on a motion to strike in accordance with *Palmisano*. The Presiding Justice further declared that in the absence of pretrial efforts on the part of a plaintiff to discover the financial assets of a defendant, no right to a hearing lies.[2] On January 7, 1999, we granted Congregation's petition for writ of certiorari.

The plaintiffs have suggested that the denial of the motion to strike the claim for punitive damages was correct because they made no attempt to discover financial information from Congregation, and therefore, the procedure enunciated in *Palmisano* is not applicable. On the other hand, Congregation has urged this Court to expand our holding in *Palmisano* and require a pretrial evidentiary hearing for all punitive damage claims. Before discussing the procedures announced in *Palmisano*, which may or may not be applicable in the instant case, we shall first consider the status of punitive damages in Rhode Island.

 This Court has repeatedly declared that punitive damages are severely restricted under Rhode Island law. *Johnson v. Johnson*, 654 A.2d 1212, 1217 (R.I. 1995) (citing *Palmisano, supra*). As we stated in *Palmisano*, a "party seeking punitive damages has the burden of producing 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.'" *Palmisano*, 624 A.2d at 318 (quoting *Sherman v. McDermott*, 114 R.I. 107, 109, 329 A.2d 195, 196 (1974)). We further stated that:

"The standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages. * * * An award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be permitted if awarded with great caution and within narrow limits." *Palmisano*, 624 A.2d at 318.

It is for the trial justice to determine whether the party seeking punitive damages has met this high standard to support such an award, and it is in the discretion of

2. The Presiding Justice ordered:
 "1. That the Congregation Mishkon Tefiloh's Motion to Strike the plaintiffs' Claims for Punitive Damages is denied for the following reasons:
 a. The Court interprets *Palmisano v. Toth*, 624 A.2d 314 (R.I.1993) as not entitling a defendant to an evidentiary hearing pursuant to a Motion to Strike a Claim for Punitive Damages unless the plaintiff has sought to discover financial information about the defendant;
 b. The plaintiffs in the above captioned matter have not attempted to discovery [*sic*] financial information about the Congregation Mishkon Tefiloh.
 "2. That the plaintiffs are precluded as of November 5, 1998 from making any pretrial effort to obtain financial information concerning the Congregation Mishkon Tefiloh."

the trier of fact to determine whether and to what extent punitive damages should be awarded. *Id.*; *see also Peckham v. Hirschfeld,* 570 A.2d 663, 668 (R.I.1990).

In *Palmisano,* this Court undertook a balancing of the demand for discovery of a defendant's personal finances in furtherance of a claim for punitive damages, and a recognition of the burden that such a demand places upon a defendant. *Palmisano* concerned a premises liability claim in which the plaintiff had been viciously attacked in the defendant's parking lot. 624 A.2d at 316. The plaintiff originally asserted four counts, and subsequently amended her complaint to include punitive damages claiming that the defendant's conduct rose "to the level of willfulness, recklessness or wickedness, as to amount to criminality, which for the good of society and warning to the individuals, ought to be punished." *Id.* The plaintiff sought discovery of the defendant's personal finances, including financial statements, deeds to all real estate holdings and related mortgages, certain Internal Revenue Service forms, investment certificates, insurance policies, and registration certificates of items of tangible personal property such as automobiles, boats, and airplanes. *Id.* at 316–17.

In recognizing the need of the plaintiff in *Palmisano* to discover the relevant financial condition of the defendant in assessing the award of punitive damages, we further recognized that the discovery requests invaded "the traditionally private domain of one's personal finances and oftentimes inconveniently [sought] disclosure of unnecessary specific details." *Palmisano,* 624 A.2d at 319 (citing *Gierman v. Toman,* 77 N.J.Super. 18, 185 A.2d 241, 244 (Law 1962)). We further stated that "[b]ecause we are mindful of the rights of a defendant to be protected from undue harassment, embarrassment, and oppression, we find that a defendant's interests will be best served if we adopt a clear standard to be satisfied by a plaintiff be-

fore permitting him or her to inquire into prejudicial information." *Id.* at 320.

In fashioning a remedy, we determined that a plaintiff must make a prima facie showing that a viable claim exists for the award of punitive damages before discovery of a defendant's financial information may be undertaken, and we prescribed a hearing procedure to be followed in situations in which hearings are deemed necessary. *Id.* We stated that "[i]f a defendant believes that a punitive-damage claim cannot be supported factually and legally, the defendant may move to strike the claim for punitive damages," and that the hearing justice may, in a given case, order an evidentiary hearing to test the propriety of the claim. *Id.* In promulgating this prophylactic mechanism, we did not envision that an evidentiary hearing would be necessary in every case. Indeed, there may be factual situations demonstrated by affidavits submitted by the plaintiff that clearly demonstrate the viability of a punitive damage claim, thus obviating the need for a time-consuming evidentiary hearing. However, in situations in which evidentiary hearings are deemed necessary, it is incumbent upon the plaintiff to "present evidence in opposition to the motion sufficient to constitute a prima facia [*sic*] showing of his or her eligibility for punitive damages, which would be determined in accordance with our standards" relative to an award of punitive damages. *Palmisano,* 624 A.2d at 320.

We further noted in *Palmisano* that "[a] defendant may cross-examine witnesses and may introduce evidence that tends to negate [any] showing made by the plaintiff." *Id.* At the conclusion of this evidentiary hearing, the hearing justice is to determine "whether the evidence presented as a matter of law and fact warrants submission to a trier of fact * * * of the punitive-damage issue." *Id.* at 320–21. The hearing justice may strike the claim for punitive damages upon a finding that the plaintiff has failed to make a prima facie showing. *Id.* at 321. However, if the

hearing justice is satisfied that the plaintiff has made an "adequate [showing] as a matter of law to justify submitting the issue of punitive damages to [a] trier of fact, he or she will deny the motion to strike" the claim. *Id.* If the motion to strike is denied, then the plaintiff may proceed to seek discovery relating to the financial ability of the defendant to respond to a punitive damage award "insofar as such evidence may be relevant to a determination of the amount adequate to deter the defendant from similar activities in the future." *Id.* However, if the motion to strike is granted, then the plaintiff is precluded from delving into defendant's financial ability to respond to punitive damages. *Id.*

 It is defendant Congregation's contention that the underlying policy of *Palmisano* entitles them to an evidentiary hearing testing the strength of a punitive damages claim even in the absence of a demand for pretrial discovery of defendant's financial assets. Congregation rationalized that "[t]he procedure adopted by the Court in *Palmisano* enables defendants and their insurers to weed out inappropriate punitive damage claims and this procedure should be available in all cases and not limited to those cases where discovery of defendants assets have been requested prior to trial." We disagree.

Contrary to defendant Congregation's assertion, this Court never intended the remedy enunciated in *Palmisano* to become a hurdle that must be overcome by every plaintiff who asserts a claim for punitive damages. Instead, the procedure was adopted to balance the needs of a plaintiff seeking discovery of financial records relative to a defendant's ability to pay an award of punitive damages and its appropriate size sufficient to constitute a punishment of the defendant with the legitimate need for protecting confidential

financial information from disclosure by an individual or business defendant. A plaintiff who is not seeking to delve into a defendant's financial net worth during the pretrial discovery stage does not have to bear the burden at a *Palmisano* hearing of meeting the rigorous standard necessary for imposing punitive damages, particularly in the early stages of litigation, simply because a claim for punitive damages has been included in the plaintiff's complaint. Indeed, there may be instances in which the financial strength of a defendant is so obvious or is a matter of public record that a plaintiff may simply elect to forgo pretrial discovery into this area.[3] In that event, no *Palmisano* hearing need be heard.

 We are satisfied that our holding in *Palmisano* should be limited to its specific facts and we therefore decline to extend it further. We unequivocally declare that the procedure set forth in *Palmisano* that requires a plaintiff to make a prima facie showing of entitlement to punitive damages is applicable only when a plaintiff has made a demand for discovery of a defendant's financial condition.

Inasmuch as the plaintiffs herein have declined to seek discovery of the defendant's financial condition before trial, the Presiding Justice was correct in declining to strike the claim and refusing to order a hearing to test the sufficiency of the claim for punitive damages.

For the foregoing reasons the defendant Congregation's petition for certiorari is denied, the writ previously issued is quashed and the order of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court with our decision endorsed thereon.

---

**3.** In these cases, the trial justice, of course, may control the presentation of evidence and opening statements relative to a punitive damage claim by entertaining a motion in limine in advance of trial or entering appropriate orders in the course of a pretrial conference conducted pursuant to Rule 16 of the Superior Court Rules of Civil Procedure.