Hattie B. McKINNIS et al.

v.

WOMEN AND INFANTS HOSPITAL
OF RHODE ISLAND et al.

No. 98–575-Appeal.

Supreme Court of Rhode Island.

April 14, 2000.

Casby Harrison, III, Providence, for plaintiff.

Timothy P. Gallogly, David W. Carroll, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiffs, Hattie B. McKinnis and Lady Johnet Bush, as the administrators of the estate of Beatrice Toe and fiduciaries for certain of Mrs. Toe's minor children, along with David Fatorma (Fatorma), appeal from a Superior Court

judgment in favor of the defendants, Women and Infants Hospital of Rhode Island, and Dr. Philip Schoenfeld. The plaintiffs cite multitudinous errors in the trial justice's charge to the jury, taking exception to the trial justice's failure to affirmatively define negligence for the benefit of the jury, as well as with the allegedly pro-defense phraseology used throughout her twenty-one page jury instruction. We ordered the parties to show cause why we should not summarily decide the issues presented in the appeal. No cause having been shown, we proceed to decide the issues before us.

In 1993, the plaintiffs sued the defendants for medical negligence, wrongful death and loss of consortium, alleging that in 1992, the defendants' negligence proximately caused Ms. Toe's death and the death of her unborn child. Following a jury trial, judgment was rendered in favor of the defendants and against the plaintiffs. In their timely appeal to this Court, the plaintiffs assert that the trial justice erred by failing to define the standard of negligence and duty of care applicable to the defendant medical practitioners. They assert that the trial justice simply provided the jury with various factual and legal scenarios, cast in a negative sense in which negligence could not be found to lie against the defendants, coupled with explanations concerning appropriate standards of care. The plaintiffs claim that the trial justice failed to explicitly define a negligence standard for the jury in her charge despite their repeated requests to do so, and ultimately forced the jury to extrapolate and fashion an *ad hoc* definition of negligence from all the various portions of the charge. They maintain also that the trial justice failed to correct her erroneous omission by failing to respond to the trial jury's explicit request made during its deliberations for a definition of the standard of negligence as

it related to the defendant doctors and nurses. Finally, because the language of the charge was allegedly profoundly pro-defendant in its tone, the plaintiffs assert that the net effect of any guessed-at definition of negligence by the jury had the potential to effectively prejudice the plaintiffs' theory of the case and "could" have misled the jury. *Anter v. Ambeault*, 104 R.I. 496, 501, 245 A.2d 137, 139 (1968).

We begin our analysis of the appeal before us by noting an example of what the plaintiffs portray as the trial justice's confusing and pro-defendant jury instruction, her statement that:

> "[a] physician is not required to utilize all diagnostic tests—a physician is not required to utilize all diagnostic tests available. Rather, a physician is required to utilize those diagnostic tests that are available and that the evidence suggests are used by other physicians in similar circumstances." [1]

Again, the plaintiffs assert that instead of defining for the trial jurors what might constitute medical malpractice negligence, the trial justice instead employed a scattershot approach and listed for them only a litany of the exceptions to the standard for negligence, and never once did adequately explain what could be deemed to be negligence.

We have reviewed the jury instruction given by the trial justice with deferential consideration, and yet, notwithstanding that manner of review, we conclude that it fails to meet the required standard. Indeed, we note the trial justice's repeated references to the "judgment" factor involved in a physician's diagnosis and treatment of a patient, and her repeated caution that a physician:

> "cannot be held liable, not even if in the exercise of that judgment he or she has

---

1. In *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 516–17, 382 A.2d 514, 517–18 (1977), we said, "[w]hen a physician fails to conduct a test, consult a report, or perform an examination, i.e., utilize the scientific

means of diagnosis at his disposal * * * the diagnostician is not employing the tools of his profession in the skillful manner required of him by law."

made a mistake as to the course of treatment to be taken. As long as the physician or nurse exercising the applicable degree of care he or she may choose between differing but accepted methods of treatment and not be held liable."

That instruction language, when repeated as in the instruction before us, we believe comes too close to implying that "good faith judgment" or "good faith error" constitutes a complete defense to a claim for medical malpractice. As we said in *DiFranco v. Klein,* 657 A.2d 145 (R.I. 1995):

"terms such as ' "honest mistake" ' and ' "bona fide error" ' have no place in jury instructions dealing with medical malpractice as they defy rational definition." *Id.* at 149 (quoting *Teh Len Chu v. Fairfax Emergency Medical Associates, Ltd.,* [223 Va. 383] 290 S.E.2d 820, 822 (Va.1982)).

"In fact, to the extent such phrases inject the physician's subjective intent or belief into the applicable standard of care as a relevant factor, they misstate the pertinent law * * * unduly confusing the issues in a negligence action by obscuring and misstating the physician's obligation to utilize the degree of care, skill, and diligence required by law * * *." 657 A.2d at 149.

■ Although this Court views a particular controverted jury charge "in light of the totality of the jury instruction," *Baccari v. Donat,* 741 A.2d 262, 264 (R.I. 1999) (per curiam), and not in piecemeal fashion, we have consistently held that " 'the trial justice [is] obliged to instruct the jury with precision and clarity with respect to the rules of laws applicable to the issues raised at trial.' " *Id.* (quoting *Jolicoeur Furniture Co. v. Baldelli,* 653 A.2d 740, 753 (R.I.), *cert. denied,* 516 U.S. 964, 116 S.Ct. 417, 133 L.Ed.2d 335 (1995)). "It is the trial justice's obligation to instruct the jury with preciseness and clarity * * * so that the jury is neither misled nor confused." *Smith Development Corp.*

*v. Bilow Enterprises, Inc.,* 112 R.I. 203, 207, 308 A.2d 477, 480 (1973).

We note that the trial jury, soon after receiving its instructions, relayed a note to the trial justice asking for the definition of negligence for doctors and nurses as well as the definition for "standard of care negligence." In response to that query, and over plaintiffs' counsel's objections, the trial justice merely chose to repeat portions of her original instruction, and failed to affirmatively respond to the trial jury's specific request for clarification.

■ After reviewing the post trial jury-charge event and analyzing the original jury charge *in toto,* we are of the opinion that the jury's question to the trial justice was a strong indicator that the jury had been charged with neither precision nor clarity in regard to the definition of negligence. Indeed, we simply fail to discern where exactly in her original instruction the trial justice instructed the jury on the concept of negligence in any explicit manner as it related to the injuries suffered by the decedents in this case. We conclude that here, in the context of a medical malpractice suit, a reasonable jury could well have been misled by the trial justice's failure to affirmatively define negligence in her original instruction or in the further jury instruction given in response to the jury's request for that definition during its deliberations. We emphasize that clarity and precision are essential when a trial justice instructs a jury on what the law is, rather than what the law is not. Such a distinction is crucial, particularly in the context of a trial when a trial justice instructs a group of lay persons on the law in order to fully assist them in the discharge of their assigned duties as finders of fact. Failure to do so by a trial justice leaves a jury rudderless on an uncharted sea of unfamiliar legalese, invariably with grave consequences. Such profound error bespeaks potential prejudice to any litigant and certainly to the plaintiffs in this case. Because we believe the jury charge was

faulty and a new trial is warranted, we need not reach the other issues raised in this appeal.

■ Upon remand, we direct the Superior Court to dismiss the plaintiff Fatorma's claim alleging that he, not the decedent's husband, was in fact the natural father of the deceased unborn child and his claim for damages pursuant to G.L.1956 § 9–1–41(c). Despite Fatorma's paternity contentions and despite the trial justice's apparent willingness to entertain his paternity and damage claim, the record before us is bare of facts showing that Fatorma first took the requisite steps in an appropriate forum to establish his paternity, as required by the Uniform Law on Paternity, G.L.1956 chapter 8 of title 15. Thus, in the absence of his paternity first being established, he has no standing to participate in the Superior Court action.

For the foregoing reasons the administrators' appeal is sustained. The Superior Court judgment is hereby vacated and the papers in this case are remanded to the Superior Court for a new trial pursuant to our instructions herein.

Justice FLANDERS did not participate.