Kenneth A. CASTELLUCCI

v.

Mark A. BATTISTA.

No. 2002–687–Appeal.

Supreme Court of Rhode Island.

March 18, 2004.

———

Todd D. White, for Plaintiff.

Peter J. McGinn, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

FLAHERTY, Justice.

The defendant Mark A. Battista's appeal seeks review of a Superior Court judgment denying his motion for a new trial after he was adjudged liable for compensatory and punitive damages in this civil suit. Battista asks this Court to grant a new trial on both liability and damages based on several errors which he claims were made by the trial justice. In the alternative, he asks that the punitive damage award be vacated, or remitted, and that the compensatory award be remitted. We discern no merit in defendant's assertions, reject each of them, and affirm the judgment of the Superior Court.

### Facts and Travel

The plaintiff, Kenneth A. Castellucci, filed suit against Battista after enduring a brutal attack of his person and a violent home invasion on the evening of April 12, 1998. The incident occurred after Castellucci's estranged wife, Charlene,[1] had become involved romantically with Battista, her boss, thereby becoming the object of unbridled emotions and bad feelings between these two men. According to plaintiff, defendant forcefully entered plaintiff's Smithfield home, violently assaulted him, and then threatened him while armed with a 9 mm handgun. Only after breaking free of Battista's grip was Castellucci able to run to his bedroom and retrieve a rifle to scare Battista out of the house. As Battista fled, he allegedly aimed his gun at Castellucci while proceeding toward his car. Castellucci fired two warning shots in the air. Battista then entered the vehicle and fled the scene. Castellucci called 9–1–1 and was later transported to the hospital complaining of chest and neck pains, and bruising. Battista was stopped by police and criminally charged later that night. On April 20, 1999, Battista pled nolo contendere to breaking and entering, carrying a pistol without a license, and simple assault. He received a sentence of seven years, the execution of which was suspended with seven years of probation, on each of the first two charges, and a one-year suspended sentence, and one year of probation, on the assault charge. The sentences were to run concurrently.

In May 1999, Castellucci filed the instant lawsuit seeking damages on the grounds of assault, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, trespass to land, and invasion of privacy. A jury found Battista liable on all counts, and awarded plaintiff $175,000 in compensatory damages, plus interest, and $325,000 in punitive damages.[2]

---

1. Kenneth and Charlene Castellucci later were divorced. Subsequently, Charlene married Mark A. Battista before the commencement of trial.

2. Battista counterclaimed on numerous

The defendant filed a motion for a new trial, claiming that the trial justice submitted the negligent infliction of emotional distress count to the jury without providing jurors with any instruction on the count. This, he says, taints the entire verdict. Moreover, defendant argued that the punitive damage award should be vacated because plaintiff failed to introduce evidence of defendant's financial means. The trial justice denied defendant's motion and upheld the jury verdict in favor of plaintiff. However, she recognized that the jury was erroneously given the option of finding defendant liable on both intentional infliction of emotional distress and negligent infliction of emotional distress, and that recovery for both was duplicative. Consequently, she remitted both the compensatory and punitive damage award in the amount of $25,000 each and conditioned the denial of the motion for a new trial on plaintiff's acceptance of the reduced award. The plaintiff accepted the remittitur and judgment entered in his favor for $450,000.[3] The defendant timely appealed.

## Issues Raised

The defendant seeks a new trial on liability and damages. He argues that the trial justice's failure to instruct the jury on the law of negligent infliction of emotional distress was a fundamental error of law that constitutes a fatal flaw in the entire verdict. He assigns error to the trial justice's denial of a directed verdict on the count of intentional infliction of emotional distress because plaintiff allegedly failed to

demonstrate any physical symptomatology or to causally connect his symptoms with the incident. The defendant also maintains that reversible error was committed by the trial justice when she allowed evidence of defendant's nolo contendere plea, arguing that permitting the jury to hear of his nolo plea was unfairly prejudicial. He further urges that the testimony of plaintiff's psychiatrist was improperly admitted because plaintiff failed to comply with the Rule 33(c) of the Superior Court Rules of Civil Procedure discovery requirement that defendant be given notice of the identity of a testifying expert witness before trial.

Moreover, defendant submits that the punitive damage award should be vacated because it was inappropriately awarded due to a lack of any evidence presented by plaintiff with regard to defendant's financial condition. We address each of these issues herein.

## Evidentiary Burden for the Damage Awards

■ We reject defendant's contention that a plaintiff should be required to present a threshold amount of evidence about a defendant's financial status as a condition precedent to an award of punitive damages or that a plaintiff's failure to offer such evidence precludes the need for the defendant to mitigate the damages with his own presentation of evidence. It is true that it is plaintiff's burden to both prove the elements of his civil claim and to demonstrate to the fact-finder that defendant's actions should be punished through exemplary damages. However, our law does not re-

---

counts, however the jury found Castellucci not liable on the three grounds submitted to the jury: invasion of privacy at work, slander and libel, and trespass to land.

**3.** After execution of the judgment, a supplementary hearing in aid of said execution was held on October 17, 2002, in accordance with Rule 69(b)(4) of the Superior Court Rules of

Civil Procedure. At the hearing, testimony was taken regarding defendant's then-current financial status, including his monthly income and expenses. Based on this evidence, the trial justice ordered defendant to satisfy the judgment by making payments of $160 per month.

quire a further demonstration of the depth of the reservoir from which resources could be drawn to satisfy a punitive damage award. Although defendant concedes that the law in this state currently does not require plaintiff to bear this burden, he urges this Court to adopt such a requirement, as is consistent with the law in California. *See Adams v. Murakami*, 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348 (1991). We decline to do so. Rhode Island decisional law is clear on this issue and we decline defendant's invitation to change it. *See Greater Providence Deposit Corp. v. Jenison*, 485 A.2d 1242 (R.I. 1984). Naturally, a defendant need not sit idly by, fated to pay a punitive award based strictly on what the fact-finder discerns solely from plaintiff's presentation of the case. Indeed, a defendant is remiss if he does not introduce evidence to mitigate the damages, to inform the fact-finder of the limits of his ability to satisfy a punitive damage award.

The defendant relies heavily on this Court's decision in *Palmisano v. Toth*, 624 A.2d 314 (R.I.1993), to support his proposition that plaintiff must bear an initial and adequate evidentiary burden of demonstrating defendant's financial means before punitive damages can be fairly calculated by the jury. The inference defendant draws from that case is misplaced. In *Palmisano*, this Court addressed the issue of when a plaintiff may demand discovery of a defendant's personal finances in furtherance of a claim for punitive damages. Careful to balance the demands of the plaintiff with the burden that such a demand places upon a defendant, we adopted a clear standard to be met by a plaintiff before he is permitted to inquire into a

defendant's private financial information. *Id.* at 320. *Palmisano* established a procedure whereby a plaintiff must make a prima facie showing at an evidentiary hearing[4] that a viable claim exists for an award of punitive damages before discovery of defendant's financial worth may be undertaken. That procedure is initiated by a motion to strike the claim for punitive damages followed by an evidentiary hearing to determine if plaintiff has established a prima facie case for a punitive damage award. If the motion to strike is denied, then the plaintiff may proceed to seek discovery to the extent relevant for a determination of the extent of defendant's ability to pay exemplary damages. *Id.* at 320–21.

■ This Court has made it clear that the plaintiff's *Palmisano* burdens are limited only to occasions in which financial information is sought for discovery purposes. We stated, "the procedure set forth in *Palmisano* that requires a plaintiff to make a prima facie showing of entitlement to punitive damages is applicable only when a plaintiff has made a demand for discovery of a defendant's financial condition." *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 781 (R.I.2000). Moreover,

"[a] plaintiff who is not seeking to delve into a defendant's financial net worth during the pretrial discovery stage does not have to bear the burden at a *Palmisano* hearing of meeting the rigorous standard necessary for imposing punitive damages, particularly in the early stages of litigation, simply because a

---

4. An evidentiary hearing may not be necessary in every case. In *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 780 (R.I. 2000), this Court stated that "there may be factual situations demonstrated by affidavits submitted by the plaintiff that clearly demonstrate the viability of a punitive damage claim, thus obviating the need for a time-consuming evidentiary hearing."

claim for punitive damages has been included in the plaintiff's complaint." *Id.*

■■■ Notwithstanding the narrow application of *Palmisano,* defendant infers an obligation on the part of a plaintiff to present evidence of financial means to the fact-finder. He questions why a discovery procedure exists if the plaintiff is exempt from meeting a threshold level of proof for punitive damages. The defendant's argument is without merit. The plaintiff must present adequate facts to support an award of punitive damages; this is a question of law for the court to decide. Such exemplary damages are warranted upon proof of willful, wanton, or malicious conduct to punish the offender and deter future misconduct. *Jenison,* 485 A.2d at 1244; *Sherman v. McDermott,* 114 R.I. 107, 109, 329 A.2d 195, 196 (1974). Although not insurmountable, this requirement sets the bar quite high for a plaintiff to recover punitive damages. If adequate facts are presented, the fact-finder must decide whether a plaintiff is entitled to such an award. *Jenison,* 485 A.2d at 1244. Although a defendant's ability to pay may well play a role in the jury's estimation of the amount of damages to award, *see Palmisano,* 624 A.2d at 318, a punitive award is not *per se* void because such evidence is not present.

This Court's discussion in *Jenison* is illustrative. In that case, a defendant against whom punitive damages were awarded argued that the trial justice erred in allowing an award without evidence in the record of his ability to pay. *Jenison,* 485 A.2d at 1244. The Court noted that relevant case law does not require proof of ability to pay as a condition precedent to a holding that the case was a proper one for punitive damages. *Id.* at 1245 (citing *Sherman,* 114 R.I. at 110, 329 A.2d at 197). In fact, our cases hold that it is the defendant who has an affirmative obligation to

present evidence of financial condition if he hopes to lessen a potential award. We stated, "[c]ase law * * * and logic demand that a defendant carry the burden of showing his modest means, facts particularly within his power, if he wants this matter considered in mitigation of damages." *Id.* at 1245. Moreover, that defendant's appeal was denied in part because "[he] was on notice that punitive damages were being sought, and he made no effort to introduce any evidence of his modest means. Under these circumstances * * * he should [not] now be heard to complain about their absence or paucity." *Id.* The same can be said for Battista in the instant matter. By not coming forward with evidence of his financial means, defendant either took a risk or made a tactical decision that did not bear fruit.

■ We are satisfied that the trial justice properly found adequate facts to support an award of punitive damages and correctly submitted the decision to a jury. An abundance of evidence was offered at trial to support plaintiff's version of events and to indicate that defendant's conduct was willful, wanton, and malicious. This was not a case of mere simple assault; it was a home invasion involving an armed intruder. We agree with the trial justice that the punitive damages award is "neither clearly excessive nor represents the passion and prejudice of the jury." Further, we give great weight to the trial justice's finding that plaintiff's testimony was "credible and very compelling" and that defendant's testimony was "riddled with inconsistencies, half-truths, and untruths." She carefully considered the criminality of Battista's actions and reasonably affirmed the punitive award, less $25,000 for the duplicative liability of infliction of emotional distress. This Court gives great deference to a trial justice's ruling on a motion for a new trial which is

conditioned on a remittitur in punitive damages. *See Mazzaroppi v. Tocco*, 533 A.2d 203, 206 (R.I.1987) (citing *Zarrella v. Robinson*, 460 A.2d 415, 418–19 (R.I. 1983)). We do not believe the trial justice overlooked or misconceived relevant evidence on a material issue in respect to damages, and she was not otherwise clearly wrong. *Mazzaroppi*, 533 A.2d at 206–07 (citing *Wood v. Paolino*, 112 R.I. 753, 315 A.2d 744 (1974)). The $300,000 award was not grossly excessive. Further, the jury did have a point of reference with respect to defendant's means because there was testimony at trial that he was president of his company, owned multiple residences, and purchased luxury items. Undeniably, Battista's actions made him a deserving candidate for punishment and deterrence. We affirm the punitive damages award with no hesitation and decline defendant's request to further remit the amount.

■ Similarly, we affirm the award of compensatory damages. The " 'task of assessing compensatory damages is peculiarly within the province of the jury' "; however, "[t]he trial justice may order a new trial on damages if he or she independently concludes 'that the award is so excessive in comparison to the injuries sustained as to fail to work substantial justice between the parties.' " *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 349 (R.I.1994) (quoting *Paquin v. Tillinghast*, 517 A.2d 246, 249 (R.I.1986)). Based on these standards, and based on our review of the record demonstrating the great toll that defendant's actions took on plaintiff's physical and mental well-being, we affirm the $150,000 compensatory damage award. It is neither excessive, nor does it fail to work substantial justice between the parties.

**Infliction of Emotional Distress**

■ Two assertions of error motivate defendant's request for a new trial on the award for infliction of emotional distress. First, he assigns as error the trial justice's denial of his motion for a directed verdict on the intentional infliction of emotional distress count based on an averment that plaintiff failed to present evidence of physical symptoms resulting from the incident. Although we agree with defendant that physical symptomatology is a required element for this count, *see Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I.1997) (citing *Reilly v. United States*, 547 A.2d 894, 898 (R.I.1988)); *see also Adams v. Uno Restaurants, Inc.*, 794 A.2d 489, 492–93 (R.I.2002) (per curiam); *Curtis v. State Department for Children and Their Families*, 522 A.2d 203, 208 (R.I.1987), we cannot agree with his conclusion that such symptoms were not proven at trial. Doctor Paul Shield, plaintiff's treating psychiatrist, offered clear and incontrovertible evidence that, as a direct result of the home invasion and assault, plaintiff suffered from posttraumatic stress disorder, which continued to traumatize him and compromise his ability to function or sleep. This Court has previously affirmed the notion that posttraumatic stress disorder and resulting symptoms similar to those suffered by Castellucci constitute physical manifestations adequate to satisfy the physical element of an emotional distress action. *See Grieco v. Napolitano*, 813 A.2d 994, 997–98 (R.I.2003). We are satisfied that the trial justice properly denied defendant's motion for a directed verdict based on clear evidence of causation and physical symptomatology.[5]

5. We review the trial justice's ruling on a motion for a directed verdict using the same analysis as is required of the trial justice. The trial justice must examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating

 The defendant also faults the trial justice for failing to instruct the jury on negligent infliction of emotional distress. He argues that because the jury found him liable on this count, which was one of seven counts set forth in the complaint, and awarded a lump sum for all damages, the entire verdict is fatally tainted and a new trial is warranted. It is true that the trial justice did not specifically charge the jury on the elements of negligent infliction of emotional distress. However, she correctly charged the jury on intentional infliction of emotional distress, and on the general concept of negligence. Although the trial justice is obliged to instruct the jury "with precision and clarity with respect to the rules of law applicable to the issues raised at trial," this Court views a particular controverted jury charge "in light of the totality of the jury instruction." *McKinnis v. Women and Infants Hospital,* 749 A.2d 574, 576 (R.I. 2000) (per curiam) (quoting *Baccari v. Donat,* 741 A.2d 262, 264 (R.I.1999) (per curiam)). Accordingly, when viewed as a whole, we believe that the jury charge adequately armed the jury with the proper legal information to determine a fair verdict.

Moreover, even if we were to assume that the trial justice's charge to the jury was in any way deficient, we would not reverse, because defendant failed to object. Rule 51(b) of the Superior Court Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objec-

tion." The defendant failed to satisfy this burden. *See Patino v. Suchnik,* 770 A.2d 861, 867 (R.I.2001) (per curiam); *Soares,* 637 A.2d at 350. Following the charge, the sole objection defendant raised concerned the instruction for punitive damages. No challenge was made with respect to failure to instruct on negligent infliction of emotional distress. Furthermore, during its deliberations, the jury made a request to "see the laws" that the court had read to them. After consulting with counsel for both sides, the judge supplied the jury with a copy of the charges previously given. Blessed with a second opportunity to alert the judge of a perceived error in the charge, defendant again acquiesced and made no objection whatsoever. The defendant concedes that there was no objection to the charge as given; the issue cannot be raised before this Court for the first time. *See Mazzaroppi,* 533 A.2d at 205. Finally, we are satisfied that any possible harm that may have come from the jury instructions was mitigated by the remittitur of damages ordered by the trial justice subsequent to the verdict.

## Evidentiary Rulings

 The defendant alleges that the trial justice should have excluded evidence of his nolo contendere plea. He asserts that evidence of the criminal disposition of a case which stemmed from the same incident was both confusing and misleading to the jury, causing unfair prejudice to him in this separate civil suit. However, the law is so clear on the issue that his argument must fail. Battista pled nolo contendere to a host of criminal charges arising

---

the credibility of witnesses. *See Soares v. Ann & Hope of Rhode Island, Inc.,* 637 A.2d 339, 344 (R.I.1994). "If after conducting this analysis, the court finds that there exist issues of fact upon which reasonable minds could

differ, the motion must be denied and those issues must be submitted to the jury." *Id.* at 345 (citing *Pickwick Park Ltd. v. Terra Nova Insurance Co.,* 602 A.2d 515, 518 (R.I.1992)).

from this very incident and he received a sentence. Evidence of this plea was elicited by Castellucci for the purposes of impeaching Battista on the witness stand. Rule 609(a) of the Rhode Island Rules of Evidence perspicuously states that "evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record[,]" and that "'[c]onvicted of a crime' includes * * * pleas of nolo contendere followed by a sentence (i.e. fine or imprisonment), whether or not suspended[.]" This Court has affirmed this plain language of Rule 609 in various civil cases. *See Korsak v. Prudential Property & Casualty Insurance Co.*, 441 A.2d 832, 834–35 (R.I.1982); *Ludwig v. Kowal*, 419 A.2d 297, 302 (R.I.1980) (emphasizing that a nolo plea followed by a sentence, whether or not suspended, constitutes a conviction).[6] Battista's plea was followed by a suspended sentence and was therefore admissible for impeachment purposes. Although Rule 609(b) allows the trial justice to exercise discretion in excluding evidence of a conviction if its prejudicial effect substantially outweighs the probative value of the conviction, we see no error in the trial justice's decision not to exclude Battista's plea. We are deferential to a trial justice's discretionary decisions and, especially in this case, we do not believe that evidence of Battista's plea was unduly prejudicial. The value gained from questioning Battista on the events of that fateful evening, which allowed the jury to make a credibility assessment, far surpassed any potential confusion or prejudice that may have resulted from learning about the plea.

■ The defendant's second contention of reversible error with regard to evidentiary rulings is the trial justice's denial of the defendant's motion to strike the testimony of Dr. Shield, Castellucci's psychiatrist. At trial, the defendant alleged a Rule 33(c)[7] discovery violation for the plaintiff's failure to give proper notice of the identity of a testifying expert witness before trial. The defendant now contends that this lack of timely notice was both inexcusable and prejudicial to him. It is true that the plaintiff's answers to the defendant's interrogatories stated that the plaintiff "has not yet made a determination relating to expert witnesses but will supplement this information when such determination is made." But, in the very same document, the plaintiff identified Dr. Shield as a health care provider who treated him for injuries suffered from the incident, indicating that he had suffered mental injury. Moreover, almost two years before trial, Dr. Shield was deposed by the defendant in his capacity as custodian of the plaintiff's psychiatric medical records, and the records were subpoenaed and consequently produced. Given that the purpose of Rule 33(c) is to prevent trial by ambush and to enable litigants to prepare for trial free from the elements of surprise and concealment, *Neri v. Nationwide Mu-*

---

**6.** We distinguish the present situation from one in which the nolo plea is followed only by probation and no sentence. Under that circumstance, the plea cannot be considered as a conviction for the purpose of impeaching credibility. *Korsak v. Prudential Property & Casualty Insurance Co.*, 441 A.2d 832, 835 (R.I.1982).

**7.** Rule 33(c) of the Superior Court Rules of Civil Procedure provides;

"If the party furnishing answers to interrogatories subsequently shall obtain information which renders such answers incomplete or incorrect, amended answers shall be served within a reasonable time thereafter but not later than 10 days prior to the day fixed for trial. Thereafter, amendments may be allowed only on motion and upon such terms as the court may direct."

*tual Fire Insurance Co.*, 719 A.2d 1150, 1152 (R.I.1998), any argument that Dr. Shield's testimony was unfairly surprising is without merit. Moreover, Dr. Shield was qualified as an "expert" at trial by stipulation from the defendant, and he had treated Castellucci for approximately three years. Thus, he was not a physician engaged solely to testify as an expert at trial. We believe that the trial justice was correct in allowing his testimony and will not disturb her ruling.

### Conclusion

For the reasons stated above, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.