### John F. McBURNEY

v.

### THE GM CARD.

No. 2004–19–Appeal.

Supreme Court of Rhode Island.

March 24, 2005.

Kevin B. McBurney, Esq., for Plaintiff.

Thomas E. Carlotto, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiff, John F. McBurney, appeals from an order entered in the Superi-

or Court in favor of the defendant, Household Bank, S.B., N.A.,[1] staying his claim of libel per se and compelling arbitration in accordance with the terms of the parties' credit card agreement. Essentially, the plaintiff argues that because his complaint includes a claim for punitive damages, a preliminary evidentiary hearing in Superior Court pursuant to *Palmisano v. Toth,* 624 A.2d 314 (R.I.1993) is required; therefore, arbitration is not a proper forum.

This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised on appeal should not summarily be decided. The plaintiff failed to appear, and defendant waived oral argument. We therefore decide the case based upon our examination of the record and the parties' written submissions. Having done so, we are of the opinion that cause has not been shown, and we affirm the order entered in the Superior Court.

## Facts and Travel

In 1997, plaintiff entered into a credit card agreement with Household Bank, S.B., N.A. (Household Bank). Household Bank establishes credit card accounts and issues credit cards under various programs, including one known as "The GM Card®," which defendant contends is not an entity but a registered trademark. On July 11, 2002, plaintiff filed a complaint against "The GM Card" in Superior Court,[2] alleging, *inter alia,* that defendant paid $1,155.69 to Enterprise Rent–a–Car for purchases not authorized by plaintiff. On June 6, 2003, an order entered in the case directing the parties to submit their claims to arbitration and staying the civil action pending arbitration.

On August 7, 2003, plaintiff filed a second complaint, which is the action underlying this appeal. In this complaint plaintiff alleged that "[b]etween the dates of September 28, 2001 and October 9, 2001 defendant through its agents and servants wrote to all major credit bureaus the false, malicious libel 'John F. McBurney * * * wants his account reported as legally paid in full for less than the full balance.' " In this action, plaintiff is seeking punitive damages from defendant. On November 25, 2003, the case was heard before a justice of the Superior Court on defendant's motion to dismiss. The motion justice considered the credit card agreement between the parties, and opined that it contained "a pretty broad arbitration clause" that encompassed "all claims, disputes or controversies arising from or relating to the agreement." He elaborated:

"I do feel that in these circumstances, the defendants have shown to the Court sufficient evidence to indicate that there has been an invocation of a rather broad arbitration clause, and all that means is not that plaintiff here doesn't have a claim, or that I'm ruling on the validity or merits of the plaintiff's claim, only *relative to the forum in which the claim* has to be resolved. And, therefore, I believe that the defendants have made a compelling case under the breadth of the credit card agreement between the parties that the resolution of this dispute, as similarly to the resolution of the dispute that's set forth in the first complaint, should be resolved by way of arbitration rather than by way of litigation before the Court."

Declining to dismiss the complaint, the motion justice stayed the action and or-

---

1. The plaintiff filed this action against "The GM Card." Household Bank, S.B., N.A., however, asserted that it is the real party in interest, and answered the complaint.

2. Ann McBurney was also a plaintiff in this action. Her claims, as well as all counterclaims asserted against her, were dismissed with prejudice by stipulation.

dered the parties to submit the matter to arbitration consistent with the terms of the credit card agreement. An order to this effect was entered on January 29, 2004, from which plaintiff prematurely appealed.[3]

On appeal, plaintiff argues that the motion justice erred by staying the action and compelling arbitration because his complaint included a claim for punitive damages that required an evidentiary hearing before a Superior Court justice in accordance with the dictates of *Palmisano*. The defendant, on the other hand, maintains that the arbitration clause between the parties is valid and enforceable; and that to hold otherwise would contravene state and federal statutes and run counter to strong public policy favoring arbitration.

### Arbitration Agreement

■ The credit card agreement at issue in this case provides under the heading "Applicable Law" that

> "[t]his Agreement and your Account will be governed by federal law and the laws of the state of Nevada, whether or not you live in Nevada and whether or not your Account is used outside Nevada. This Agreement is entered into in Nevada and all credit under this Agreement will be extended from Nevada."

In addition, under the heading "Arbitration," the agreement provides that "[t]his arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16 (the 'FAA'). The arbitrator shall apply applicable substantive law consistent with the FAA * * *."

■ In a case involving a similar agreement, we held that "[a]s a general rule, parties are permitted to agree that the law of a particular jurisdiction will govern their transaction." *Terrace Group v. Vermont Castings, Inc.*, 753 A.2d 350, 353 (R.I.2000) (quoting *Sheer Asset Management Partners v. Lauro Thin Films, Inc.*, 731 A.2d 708, 710 (R.I.1999)). "The law of the state chosen by the parties will apply unless the chosen state has no substantial relationship to the parties or the transaction." *Id.* However, "the 'procedural law of the forum state applies even if a foreign state's substantive law is applicable.'" *Oyola v. Burgos*, 864 A.2d 624, 626–27 n. 2 (R.I.2005) (quoting *Israel v. National Board of Young Men's Christian Association*, 117 R.I. 614, 620, 369 A.2d 646, 650 (1977)). "Among those jurisdictions in which there is a reasonable basis for choosing the law of that jurisdiction are: (1) the place of performance of one of the parties; (2) the domicile of one of the parties; or (3) the principal place of business of a party." *Sheer Asset Management Partners*, 731 A.2d at 710 (citing Restatement (Second) *Conflict of Laws* § 187(2)(a), cmt. *f* at 567 (1971)). Here, the credit card agreement says that "all credit under this Agreement will be extended from Nevada." In addition, defendant's address, as provided in the agreement, is in the State of Nevada. We are satisfied that this is sufficient to create a substantial relationship between the State of Nevada and the parties to this case. Therefore, the applicable substantive law is federal law and that of the State of Nevada.

---

**3.** The plaintiff filed two notices of appeal, both before entry of the order on January 29, 2004. Indeed, the case was certified and docketed in the Supreme Court on January 21, 2004. This Court generally has overlooked the premature filing of a notice of appeal, and we shall do so in this case. *See, e.g., Russell v. Kalian*, 414 A.2d 462, 464 (R.I.1980).

Section 2 of the Federal Arbitration Act (FAA) provides that a

> "written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The United States Supreme Court has underscored the broad reach of the FAA, *see Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (citing *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)), applying it to transactions "in fact 'involv[ing]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281, 115 S.Ct. 834. States are able to "regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' " *Id.* (quoting 9 U.S.C. § 2). They may not, however, "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Id.*

The parties to the present case do not contest that the agreement between a bank in Nevada and a consumer in the State of Rhode Island, which involves credit extended from the State of Nevada, in fact, involves interstate commerce. Moreover, the parties, on appeal, do not in any way challenge the validity of the credit card agreement.

## Standard of Review

■ We, therefore, turn to Nevada law to determine the applicability of the arbitration agreement. The Nevada Supreme Court has stated that "in reviewing arbitration agreements, the issue of '[w]hether a dispute is arbitrable is essentially a question of construction of a contract.' " *Kindred v. Second Judicial District Court,* 116 Nev. 405, 996 P.2d 903, 907 (2000) (quoting *Clark Co. Public Employees v. Pearson,* 106 Nev. 587, 798 P.2d 136, 137 (1990)). Furthermore, " 'the reviewing court is obligated to make its own independent determination on this issue, and should not defer to the [lower] court's determination.' " *Id.* We also review questions of contract interpretation on a *de novo* basis. *Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003) (citing *Lerner v. Ursillo,* 765 A.2d 1212, 1217 (R.I.2001)); *All Star Bonding v. State,* 119 Nev. 47, 62 P.3d 1124, 1125 (2003) (citing *Grand Hotel Gift Shop v. Granite St. Insurance Co.,* 108 Nev. 811, 839 P.2d 599, 602 (1992)).

## Discussion

Nevada has adopted the Uniform Arbitration Act (UAA). Chapter 38.219 of title 3 of the Nevada Statutes governs the validity of agreements to arbitrate. It provides in part:

> "1. An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.
>
> "2. The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." Nev.Rev.Stat.Ann. § 38.219 (Michie 2002).

■ "Nevada's version of the Uniform Arbitration Act (UAA) [Nev.Rev.Stat. 38.206 to 38.248] clearly favors arbitration." *Mikohn Gaming Corp. v. McCrea,*

120 Nev. 248, 89 P.3d 36, 39 (2004) (citing *Phillips v. Parker*, 106 Nev. 415, 794 P.2d 716, 718 (1990)). Nevada previously has recognized a strong policy in favor of arbitration, stating that "[c]ourts are not to deprive the parties of the benefits of arbitration they have bargained for * * *." *Phillips*, 794 P.2d at 718. Concerning the scope of arbitration agreements, Nevada interprets these liberally and will "resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Kindred*, 996 P.2d at 907 (quoting *International Association of Firefighters, Local # 1285 v. City of Las Vegas*, 104 Nev. 615, 764 P.2d 478, 480 (1988)). The Nevada Supreme Court has held that two arbitration agreements between an employee and her firm, which provided that " 'any dispute, claim or controversy that may arise between me and my firm' must be arbitrated" and " 'any controversy or dispute arising between you and [the employer] in any respect to this agreement or your employment by [the employer] shall be submitted for arbitration,' " were enforceable "[b]ecause of the broad language of both arbitration clauses and the fact that Nevada overwhelmingly favors arbitration." *Id.*

Likewise, the arbitration clause subject to the present dispute is very broad. It provides that:

"any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ('Claim'), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed."

Furthermore, at the end of the section on arbitration, the agreement provides in capitalized and bold letters:

**"THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY."**

The vast scope of the arbitration agreement encompasses contract disputes such as the one subject to the initial lawsuit filed by plaintiff. In addition, it explicitly covers tort claims, including plaintiff's claim for libel per se, that forms the basis for this appeal. In construing contracts, the Nevada Supreme Court has explained that "[i]f there be no ambiguity apparent, the words must be taken in their usual and ordinary signification, and the context interpreted in accordance with grammatical rules." *Parsons Drilling, Inc. v. Polar Resources Co.*, 98 Nev. 374, 649 P.2d 1360, 1362 (1982) (quoting *Rankin v. New England and Nevada Silver Mining Co.*, 4 Nev. 78, 83 (1868)). The parties do not argue that there is any ambiguity contained in the agreement, nor do we perceive one. Consequently, we conclude that under Nevada law, applicable to this case, the arbitration agreement is enforceable, and the trial justice was

correct to stay plaintiff's action pending arbitration.

## Punitive Damages

■ In arguing that arbitration is not a proper forum for this case, plaintiff argues that pursuant to *Palmisano*, his request for punitive damages requires a preliminary hearing before a justice of the Superior Court, which arbitration cannot satisfy. This Court recently explained, however:

> "In *Palmisano*, this Court addressed the issue of when a plaintiff may demand discovery of a defendant's personal finances in furtherance of a claim for punitive damages. Careful to balance the demands of the plaintiff with the burden that such a demand places upon a defendant, we adopted a clear standard to be met by a plaintiff before he is permitted to inquire into a defendant's private financial information. * * * *Palmisano* established a procedure whereby a plaintiff must make a prima facie showing at an evidentiary hearing that a viable claim exists for an award of punitive damages before discovery of defendant's financial worth may be undertaken." *Castellucci v. Battista*, 847 A.2d 243, 247 (R.I.2004).

> "[A] plaintiff who is not seeking to delve into a defendant's financial net worth during the pretrial discovery stage does not have to bear the burden at a *Palmisano* hearing of meeting the rigorous standard necessary for imposing punitive damages, particularly in the early stages of litigation, simply because a claim for punitive damages has been included in the plaintiff's complaint." *Id.* at 247–48 (quoting *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 781 (R.I.2000)).

■ The Court also noted that "[a]n evidentiary hearing may not be necessary in every case." *Id.* at 247 n. 4. "[T]here may be factual situations demonstrated by affidavits submitted by the plaintiff that clearly demonstrate the viability of a punitive damage claim, thus obviating the need for a time-consuming evidentiary hearing." *Id.* (quoting *Mark*, 745 A.2d at 780). Therefore, the case law demonstrates that not every claim of punitive damages requires a hearing before a Superior Court justice.

Moreover, plaintiff does not argue, nor do we detect, any prohibition in Nevada statutory or case law against an award of punitive damages by arbitration. In *Wichinsky v. Mosa*, 109 Nev. 84, 847 P.2d 727, 731 (1993), for example, the Nevada Supreme Court, albeit reversing an arbitrator's award of punitive damages for lack of evidence, did not suggest that punitive damages could not be awarded in arbitration.

Furthermore, the Supreme Court has held that the FAA preempted New York State law, which provided that arbitrators may not award punitive damages. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 58, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The Supreme Court stated that "we think our decisions in *Allied–Bruce, Southland,* and *Perry* make clear that if contracting parties agree to include claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such a claim from arbitration." *Id.* at 58, 115 S.Ct. 1212 (citing *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).

In the case before us, we are satisfied that the net cast by the arbitration clause was broad enough to ensnare the plaintiff's claims in tort, as well as in contract, and enmeshed his demand for punitive damages. We therefore affirm the order staying the civil action pending resolution of arbitration in accordance with the terms of the credit card agreement.

## Conclusion

Accordingly, the order of the Superior Court is affirmed and the papers in this case are remanded to the Superior Court.